380 A.2d 455

**COMMONWEALTH of Pennsylvania**

**v.**

**Donald ANDERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 22, 1976.

Decided Dec. 2, 1977.

Michael J. Stack, Jr., Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken from judgment of sentence (2½ years' probation) rendered following non-jury trial and adjudication of guilty of riot.[1] "Crimes Code", Act of 1972, Dec. 6, P.L. 1482, No. 334, 18 Pa. C.S. § 5501. This appeal involves only one of five defendants below.

1. Additional charges were aggravated assault, to which a demurrer was sustained; possession of instrument of crime, to which nol pros was accepted; and criminal conspiracy and simple assault, to which findings of not guilty were returned.

The facts from trial show that one Derrick Jordan was walking in the vicinity of 29th and Dauphin in Philadelphia when a group of fifteen to twenty males, including the defendants below, approached and informed Jordan that he had "intruded into their territory." A fistfight began between Jordan and one of the gang which was "protecting its territory." Friends of Jordan arrived by automobile, entreating the two fighting to cease. The driver of this car was one Barry Ward, who had alighted from his auto and vocally attempted to end the disturbance. Failing, he returned to his car and, while standing at the open door, as Jordan testified, one of the rival gang, a co-defendant at trial, approached Ward from behind with "a long shiny iron thing" resembling an ice pick. Ward slumped to the ground, partially into the car. He recovered sufficiently to drive away, while the gang threw bricks and other matter onto his departing auto. While he had not seen who had knifed him, Ward testified that he drove to a police van and was then taken to a hospital. Shortly after Ward's departure the altercation was over.

During cross-examination of the victim, Jordan testified that he had discussed the altercation with investigating police officers at the scene. But the witness did not know whether any officer had written down his comments about the occurrence. The Commonwealth attorney, when pressed for any writing by an officer regarding the witness' statement, replied that the prosecution possessed no written statements by Jordan, or anything which he had adopted. The lower court refused defense request to view the investigation file and stated that if the officer who had talked with Jordan had recorded on paper what had been told him, the defense would be allowed to see it when that officer should take the witness stand. Later in the trial, Jordan testified that he had been taken to the stationhouse shortly after the arrest of appellant and his cohorts, and was interviewed by detectives to whom he gave names, nick-names, and descriptions of his assailants as well as detail as to the event. Again defense counsel requested to see whatever had been

recorded about this. The Commonwealth attorney respond-
ed as he had before, and the lower court refused the request.
Thereupon defense counsel requested to see the investiga-
tion report, known as a "49", so as to be able to determine if
there was any statement by or from Jordan, recorded as
such, and the name of the officer who had written it. The
resolution of this request, as reflected by the trial record,
was yet another refusal to allow the defense to see the
officer's reports, the lower court apparently relying upon the
somewhat equivocal statement of the Commonwealth attor-
ney that there was no "isolated" or "identifiable" statement
made by Jordan.

Immediately prior to the testimony of investigating detec-
tive Kaisinger, the Commonwealth attorney produced and
showed to defense counsel a three-page set of notes prepar-
ed by the detective as a result of his having talked with
victim Jordan, together with the standard police reporting
form, filled in by Kaisinger, known as a "49". Thereupon,
the detective testified that it was not his normal procedure
to transcribe handwritten notes of interviews with witness-
es, and that he had incorporated the interview with Jordan
into what he had written on the "49" form. The length of
this "49" was stated to be one-and-one half pages. On many
occasions during the extensive cross-examination of the de-
tective, he stated that all of the information about the crime
which had come to him from his interview with Jordan
would appear in the "49" which he constructed as a result of
the interview. This report was accepted into evidence and
was the subject of much cross-examination.

As one of his assignments of error, appellant challenges
the lower court's refusal to show to the defense the police
report during cross-examination of the witness [Jordan]
whose spoken recollections gave rise to the report. Reliance
is placed upon *Commonwealth v. Morris*, 444 Pa. 364, 281
A.2d 851 (1971), *inter alia*, for the well-accepted precept that
the defense is entitled to see and use any report, even notes,
made by a police officer in which facts supplied by a witness
were either accurately recorded by the officer or were

adopted by the witness during that witness (the speaker's) cross-examination.

It was the position of the lower court, both at trial and in its Opinion, that the detective made no notes in the presence of Jordan, merely summarized his own conclusions of what Jordan had told him about the crime, and presented to Jordan nothing for his adoption. The trial court concluded that the detective's report contained only his own findings, and as such was properly admitted during his (the officer's) testimony, and properly refused during Jordan's testimony. It also concluded that nothing in the statement as written by the detective was attributable to witness Jordan. As the record stands now we have reference to notes of the investigating officer which are not a part of the record. We must examine the report in its entirety so as to be able to determine if it was error to have denied it to defense when first requested, i. e., when the person who was interviewed testified.

We are prevented from doing this because the official record of the case as maintained by the lower court does not contain the form "49" in question, either by itself or as augmented by the three pages of handwritten notes which were discussed among defense counsel, prosecution, and the trial judge. Our search of the record discloses the presence of one form "49", entitled "Investigation Report", prepared over the signature of detective Kaisinger. But this report is only a half-page in length, mentions the name of Derrick Jordan as the complainant, and further contains only the name of appellant and the charges below. We must conclude that this is not the report which was a part of the trial—it is not one-and-a-half pages in length and it does not detail the facts of the crime. The record does not contain in any part of it any handwritten notes. Despite the best efforts of our Prothonotary in repeatedly contacting the lower court, its clerk, and the office of District Attorney, these missing papers cannot be found. The record in this case is deficient in a crucial regard, with the result that we cannot give this appeal an adequate review. We shall not

consider appellant's other allegations of error because of our present disposition. Consequently we reverse judgment of sentence and remand for new trial.

Reversed and remanded.

SPAETH, J., concurs in the result.